## Francis et al., Appellants, *v.* Dean.

*Equity—Building restrictions—Garage—Residential district— Decree.*

In a suit in equity to enjoin the defendant from converting the space under her front porch into a garage, the bill will be dismissed where such use of the defendant's property does not constitute a nuisance in itself, or violate any building restrictions.

Where the defendant seeks to change the space under a front porch, which had formerly been used for storing coal, into a place for keeping her automobile, and in so doing does not encroach on a prohibitive building line, she cannot be held to be violating the terms of her deed, and an injunction will be dismissed.

Building restrictions should be narrowly construed as being in derogation of the full rights of ownership of the person holding title to the property.

Argued October 18, 1922. Appeal, No. 217, Oct. T., 1922, by plaintiffs, from judgment of C. P. No. 2, Phila. Co., June T., 1921, No. 6911, in equity dismissing bill for an injunction in the case of Emma May Francis, Sarah Vera Greer, Howard B. Wimer, William Bradley, Benjamin Huckle, J. D. Morrison, Edward F. Gordon v. Martha W. E. Dean. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Bill in equity to restrain the erection of a garage. Before STERN, J.

The facts are stated in the following opinion by the court below, refusing the injunction:

108, (1922).]          Opinion of Court below.

This is a bill in equity praying for an injunction to restrain the defendant from erecting and from using a private garage under the porch of her home, at 5647 Laᴌsdowne Avenue, in the City of Philadelphia.  On bill, answer, replication and proofs the court adopts as its findings of fact and conclusion of law the plaintiffs' and defendant's request for findings of fact and conclusions of law as affirmed or modified by the chancellor, and which are sufficiently complete to obviate the necessity of additional findings being made.

The injunction is asked for on two grounds: (1) that the garage constitutes or will constitute a nuisance, and (2) that its erection is in violation of a building restriction in the defendant's chain of title.

1. As to the first alleged ground for equitable relief, the chancellor has found as facts that the physical construction of the garage as completed does not and will not constitute a nuisance, and that the proposed use of the garage by the defendant will not apparently constitute a nuisance, as far as can be ascertained at the present time.

The bill alleges that the driving of an automobile by the defendant over the sidewalk into the street, with the resulting danger to pedestrians and especially children, will be an offensive and dangerous nuisance, and at the hearing of the cause there was some testimony also to the effect that there would be danger from fire, that the value of adjoining property would be depreciated, that there were already odors of gasoline penetrating the adjoining houses, that the noise of the running of the engine was objectionable.  It is obvious that these apprehended dangers can result, if at all, only from the use and not from the mere construction of the defendant's garage.  It has been repeatedly held that the character of the architecture of the building erected upon a tract of ground is a matter (in the absence of building restrictions) over which the court may not exercise supervision.  It is only when the use to which the building

is put becomes offensive that the court will act: Bergmann and Arn v. Davis, 29 Dist. R. 102; Penniman v. Hoffman, 262 Pa. 100. As far as the plans of the defendant as to the use of the garage are at present disclosed, it would not appear to the court that the unpleasant consequences are likely to be as serious as the complainants apprehend. The defendant stated at the hearing that she intended to store only a single automobile in the garage and that the car would enter and leave the garage on an average of less than once a day, and that no gasoline or oil would be stored in the garage. While it is true that the use of any automobile necessarily involves the causing of some dirt, grease, noise, odors, and dangers to pedestrians, the prospective magnitude of such unpleasant results in the present case does no seem to be sufficiently serious to justify a chancellor in granting an injunction on the ground of their constituting a nuisance. Automobiles apparently have become one of the "necessities" of modern life, and their utility depends in large degree upon their being located within easy access of the persons desiring to use them, which means that many of them must be stored (either in private or public service garages) in residential neighborhoods. Garages differ in this respect from numerous types of mills or factories the exact location of which within the city is often relatively unimportant, so that such mills or factories may conveniently be segregated or confined to particular neighborhoods. To hold, therefore, that a garage, especially a private one, is necessarily a nuisance in a residential neighborhood, would be to destroy the reasonable advantages resulting from the use of automobiles. It is true that many people do not view with favor the erection and operation of a garage adjoining their homes or within close proximity thereto. Unfortunately, however, city life is such that one cannot choose his own neighbors, nor determine the uses to which adjoining property may be put, and urban dwellers must sacrifice some of the quiet and isolation which constitute

the advantages of country life for the other benefits which residence in a city affords. Of course any garage may in fact be conducted so as to be a nuisance, and if at any time in the future the defendant operates this one in such a manner as to give her neighbors just cause of complaint they will not be barred from seeking and obtaining the relief to which equity under such circumstances would entitle them .

2. We come therefore to the second ground upon which an injunction is prayed, namely, that there is a restriction in the defendant's chain of title. This restriction, which undoubtedly runs with the land, provides "that any building erected on said lot of ground shall set back at least twenty-three feet from the building line of said Lansdowne Avenue and shall not extend beyond the line of the present building and the buildings on the adjoining lots of ground. This restriction, however, is not to be held as covering or applying to necessary porches and steps."

In accordance with said restriction, which applies to all the ground on the north side of Lansdowne Avenue between 56th and 57th streets, none of the houses constructed there is built further forward than the twenty-three-feet minimum from the building line, except for the permitted porches and steps. These porches are substantially constructed, with elaborate ornamental stone walls running from the ground to the level of the porch floor, and they support, by large pillars, roofs which project out from the second-story levels of the buildings. In front of the porch constructions are grass terraces. The cellars extend from the back of the lot right through to the front wall of the porch, that is to say, part of the cellar underlies the porch itself, and the complainants admit that in each of their homes there is erected a coal bin in the part of the cellar under the porch, which is used for the storage of coal.

All that the defendant has done in the present case is to utilize the portion of the cellar under the porch of her

house for the purpose of storing an automobile; in other words, she has installed a garage there instead of a coal bin. In order to give access to the street she has broken down the stone wall in front of the porch and substituted therefor two doors constituting the entrance and exit to and from the garage. But these doors are not built out any further to the curb than was the stone wall which they replaced; in fact they recede some inches from the line of the former wall. We therefore have a case where, as far as the exterior appearance of the building is concerned, the line of the outer wall of the porch remains the same, but instead of a stone wall there are two doors, and the terrace has been removed in front of these doors. It is true that this change constitutes quite a decided difference in the physical appearance of the house and to a certain extent mars the symmetry of the row of structures in the block, but there is nothing in the restriction which protects or seeks to protect the æsthetic appearance of the block or which requires the retention of the terrace effect or of the stone walls constituting the front of the porches.

The whole question on this phase of the case is whether the change from a coal bin to a garage construction under the porch of the defendant's house constitutes a "building" other than porches or steps within the twenty-three-feet restricted area. It seems clear to the chancellor that the purpose and intent of the restriction were to preserve a uniform building line for this row of houses, which building line was to be at least twenty-three feet back from the official building line, thus preventing any one or more houses from abutting out beyond the others and thereby shutting out light, air and view from the others. The only exceptions were to be in the case of the porches and steps. The defendant's building remains in these aspects as it was before. The front wall of the house proper has not been changed; the porch has not been changed; the steps have not been changed; and there has been no new construction which

occupies any part of the ground not previously occupied by the defendant's building.   All that the defendant has done has been, as above stated, to change the use of the cellar under the porch, to change the nature of the wall in front of the porch, and to remove the terrace.   There might perhaps have been room for argument that the original purpose or at least effect of the restriction was to prevent any use of the ground whatever in front of the main building line other than for porches and steps, and therefore that the utilization of the ground under the porch for a garage was not permissible, but since the cellars have always extended under the porches, and since the complainants admit that they have always used the space under the porches for storing coal in bins erected there, it does not seem to the chancellor that the extreme argument thus suggested can now be pressed by them.   On the contrary it would seem reasonable to hold that it is as proper to use the front parts of cellars for the purpose of storing automobiles as for storing coal and to wall in such spaces as garages instead of as coal bins.

As a matter of fact it is obvious that the real annoyance to the complainants is not the fact that there is a garage under the porch, but that the terrace has been taken away and the front wall under the porch replaced by wooden doors.   It is this change which causes offense from the æsthetic point of view, and undoubtedly some degree of irritation on their part is justified, but, as previously stated, there is nothing in the restriction which aims to preserve the architectural status or uniformity in appearances of the houses, the only limitation being as to the line of building.

It may be added in conclusion that it has been uniformly held that all building restrictions of this nature are to be narrowly construed as being in derogation of the full rights of ownership of the person holding title to the property.

For the reasons above expressed the chancellor is of opinion that the erection of this garage does not constitute a violation of the building restriction.  As far as the nuisance feature is concerned, the complainants may renew their application at any time when, as a result of the operation of the garage, they may be able to demonstrate that a nuisance in fact exists.  The court therefore enters the following:

And now, to wit, this first day of February, 1922, this cause having come on to be heard upon bill, answer, replication and proofs, it is ordered, adjudged and decreed:

1. That the bill be dismissed.

2. That the complainants pay the costs of these proceedings.

3. That this decree is without prejudice to the complainants to apply for an injunction at any time hereafter if and  when the use of the garage by the owner or any tenant of premises 5647 Lansdowne Avenue shall constitute a nuisance in fact.

Plaintiffs appealed.

*Error assigned,* among others, was the decree of the court.

*Herman Müller,* for appellants.—The construction of the garage was in violation of the building restrictions: Dewar v. Carson et al., 259 Pa. 599; Hoffman et al. v. Parker et al., 239 Pa. 398.

*Victor Frey,* and with him *A. T. Ashton,* for appellee, cited: Willock v. Arensberg, 51 Pa. Superior Ct. 77; Dewar v. Carson, 259 Pa. 599.

Per Curiam, December 11, 1922:

The opinion of Judge Stern, which will appear in the report of this case, fully vindicates the decree entered by the court below, and for the reasons therein stated the specifications of error are overruled.

The decree is affirmed and the appeal dismissed at cost of the appellant.