**Rolf LARSEN, Appellant,**

v.

**The ZONING BOARD OF ADJUSTMENT of the CITY OF PITTSBURGH, ALLEGHENY COUNTY, Pennsylvania**

v.

**Michael and Theresa NUZZO.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 23, 1994.

Decided Jan. 31, 1995.

---

Robert A. Felkay, for appellant.

1. *See* Larsen Exhibit "3" attached as Appendix A.

Gretchen G. Donaldson, for appellee City of Pittsburgh.

Martin W. Sheerer, for intervenors Michael and Theresa Nuzzo.

Before SMITH and KELLEY, JJ., KELTON, Senior Judge.

KELTON, Senior Judge.

Appellant Rolf Larsen (Larsen) appeals from the April 4, 1994 order of the Court of Common Pleas of Allegheny County (trial court) affirming the City of Pittsburgh Zoning Board of Adjustment's (Board) grant of a dimensional variance to Michael and Theresa Nuzzo (the Nuzzos).

The Board had allowed a deviation of eighteen feet past the rear yard setback line to allow the construction of a twenty by twenty foot deck at the rear of the Nuzzos' residence at 816 Grandview Avenue in the Mount Washington section of Pittsburgh. The back end of the new deck would also extend approximately eighteen feet past the rear of one neighbor's building and another neighbor's rear deck.[1] Larsen, who resides in the adjacent building, had objected before the Board and the court.

The sole issue on appeal is whether the Nuzzos have shown that the steep slope circumstances which affect their land are unique and applicable to the Nuzzo land alone or whether they are conditions which apply generally in the neighborhood. We conclude that the circumstances are not unique to the Nuzzos' property because they apply generally to the neighborhood. We therefore reverse.

In a July 23, 1993 decision, the Board made the following findings of fact:

1. The subject property is located in the 19th Ward of the City of Pittsburgh and is zoned 'R4' Multiple–Family Residence District.

2. The subject action is a remand from the Court of Common Pleas of Allegheny County for taking of additional testimony and rendering of a decision by the Board of Adjustment. The subject action in this

The Nuzzo property is Lot 25 thereon.

matter is an appeal to erect a 20' by 20' open deck at the rear of an existing two-story, one-family dwelling. Such requires the grant of a rear yard variance of 12' instead of 30'.

3. The subject matter was before the Board of Adjustment and, following a decision by the Board of Adjustment granting the aforementioned variance, was appealed to the Court of Common Pleas of Allegheny County. The Court granted the Motion for Taking of Additional Testimony and remanded the matter to the Board of Adjustment.

4. The Board took additional testimony in the above-captioned matter and following the taking of that testimony the Board renders the following decision. The Board reaffirms original Finding of Fact No. 3 that the subject lot is long and narrow and that the existing main structure on the lot occupies approximately seventy-five percent (75%) of the lot. The Board would note that the lot is nonconforming for a single-family structure. The square footage of the lot is 4,375 sq. ft. The minimum lot area for a single-family structure is 5,000 sq. ft. The Board would further note that the structure as it is configured on the nonconforming lot is nonconforming as to side yards and that the current rear portion of the structure sits only 32' from the rear property line.

5. The Board would note therefore that any additional construction on this site would require a variance. The Board reaffirms Finding of Fact No. 4 that the open deck will provide an outside enjoyment area for use by the [Nuzzos] family. The Board further notes that due to the topography of the rear portion of the lot, the [Nuzzos] cannot build a deck which would be at grade and which would not require variances by the Board of Adjustment. The unique topographical problems faced by the [Nuzzos] deny [them] the opportunity to reasonably use [their] land for the placement of a deck that would be at grade. Those unique circumstances are exactly the issues and circumstances that are considered in Section 909.05 of the Pittsburgh Code of Ordinances and are circumstances upon which the Board bases

its decision to grant the rear yard variance.

(Board's Findings of Fact Nos. 1–5, R.R. 116–17.)

Having made those findings, the Board concluded that 1) the Nuzzos met the burden of proof necessary for the grant of the requested variance; 2) denial of the variance would result in unnecessary hardship thereby denying the Nuzzos reasonable use of their property; and 3) the Nuzzos' proposed use would not be contrary to the public interest. (R.R. 117.) Accordingly, the Board granted the variance "for the erection of a 20' by 20' open deck at the rear of an existing two-story, one-family dwelling at 816 Grandview Avenue." (R.R. 118.)

Without taking additional evidence, the trial court affirmed the Board's order on April 4, 1994. The trial court related the following facts which are not in dispute in this appeal:

> Mr. and Mrs. Nuzzo bought their home on Mt. Washington in 1988. *Like most properties on this side of Grandview Avenue their backyard ends in a precipitous slope down to the Ohio River.* Shortly after moving in the Nuzzos built a large addition to the rear of their house, but as no setbacks were infringed, zoning board approval for the addition was not necessary.

(Trial court's April 4, 1994 opinion at 2, emphasis added.)

In support of its decision affirming the grant of a variance, the trial court stated:

> In addition to giving them more living space, the addition greatly improved their view of the City by bringing the rear of their house even with apartment buildings that had previously hemmed them in.... It is axiomatic that the 30 foot rear yard setback requirement which the Pittsburgh Zoning Ordinance applies to many residential zoning districts is primarily intended to provide a rear yard. A precipitous slope not being adaptable for use as a rear yard, the Nuzzos will be deprived of the reasonable use of their property unless they are afforded a means to create a level family space. Moreover, this hardship is not self created by the prior addition to the rear of

the Nuzzo's house. Granted, if it were not for the addition, the deck could have been constructed on the buildable area of the lot without the need for a zoning variance. However, a less hilly lot would offer at least a thirty foot rear yard regardless of whether the buildable portion of the lot were occupied. Because it is a hardship to be deprived of a rear yard where the regulations of the zoning district contemplate a 30 foot setback, and because the lack of usable space results from the topography of the lot, the grant of a variance by the Board was proper.

(Trial Court's April 4, 1994 Opinion at 2–4.)

■ Before our Court, Larsen raises again the issue of whether the Nuzzos met the criteria necessary for the granting of a variance. Where the trial court takes no additional evidence, our scope of review in an appeal from a decision of a zoning hearing board is limited to determining whether the Board committed an error of law or a manifest abuse of discretion. *Searles v. Zoning Hearing Board, City of Easton,* 118 Pa.Commonwealth Ct. 453, 545 A.2d 476 (1988).

Section 25057 of the Second Class Cities Code, 53 P.S. § 25057, and Section 909.05 of the City's Zoning Ordinance contain the applicable variance criteria.[2] We recently noted as follows:

> These provisions generally require the party seeking a variance to prove that, owing to special circumstances or conditions unique to the property, strict application of the ordinance would result in unnecessary hardship, depriving him of the reasonable use of his property. In addition, the party must establish that the requested variance is for a use permitted in the district, that it is the minimum needed to afford relief, that it requires the least modification of the regulation from which the variance is sought and that it will not be contrary to the public interest. The reasons for granting a variance must be substantial, serious and compelling. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

*Damico v. Zoning Board of Adjustment of the City of Pittsburgh,* 164 Pa.Commonwealth Ct. 394, 407–08, 643 A.2d 156, 162–63 (1994) (footnotes omitted).

■ Citing Mr. Nuzzo's testimony regarding unnecessary hardship,[3] counsel for Lar-

2. Section 909.05 of the City's Zoning Ordinance provides as follows:

(a) [T]he board shall have the power to vary or adjust the strict application of the requirements of this Zoning Ordinance for only a use permitted in the district where the lot is located, in the case of an exceptionally irregular, narrow, shallow or steep lot or other exceptional physical condition not provided for in the district regulations or as a special exception, where strict application would result in practical difficulty or unnecessary hardship that would deprive the owner of the reasonable use of the land or structures involved, but in no other case. No variance in the strict application of any provisions of this Zoning Ordinance shall be granted by the Board unless it finds:

(1) That there are special circumstances or conditions, fully described in the findings of the Board, applying to the land or structure for which the variance is sought, which circumstances or conditions:

A. Are peculiar to such land or structure and do not apply generally to land or structures in the neighborhood, and have not resulted from any act of the appellant or his predecessors in title subsequent to the adoption of this Zoning Ordinance, whether in violation of the provisions hereof or not; and

B. Are such that strict application of the provisions of this Zoning Ordinance would deprive the appellant of the reasonable use of such land or structure;

(2) That the variance to be granted by the Board is:

A. For a use permitted in the district;

B. One that will require the least modification of the prescribed regulation; and

C. The minimum variance that will accomplish this purpose; and

(3) That the granting of the variance shall:

A. Be in harmony with the general purposes and intent of Section 901.06;

B. Be in accordance with the general or specific rules herein contained; and

C. Be not injurious to the neighborhoods, or otherwise detrimental to the welfare of the people at large.

3. Mr. Zottola [Board Chairman]: Mr. Nuzzo, briefly what hardships would exist, or what are the circumstances that are the reasons for building the deck? What hardships exist that will affect your use of your property should the Board deny you that request?

Mr. Nuzzo: Well, we have a two-year-old son and of course, our choice to move there, but there's really not—the homes are so close, there's really not anywhere for him to go. So

sen argues that the Board erred in granting the variance because "[t]here is no case in the Commonwealth that holds that a play area for a two year old child is a substantial, serious or compelling reason for granting a variance." (Larsen's Brief at 9.) Counsel notes that a variance should not be granted merely because it will do no harm. *See Ottaviano v. Zoning Board of Adjustment of Philadelphia,* 31 Pa.Commonwealth Ct. 366, 376 A.2d 286 (1977). He further notes that, without the need of a dimensional variance, the Zoning Administrator had, on March 10, 1989, given the Nuzzos permission to add an eight by twenty foot deck onto the back of their house. Thus, counsel contends that the fact that the Nuzzos now require a *larger* play area for their child does not establish the type of hardship necessary for a variance.

Counsel for the Nuzzos argues to the contrary that the provision of a play area for a child is a substantial, serious and compelling reason for the grant of a variance. He does not, however, cite any case law in support of his argument.

■ Although we too could find no case specifically addressing the needs of property owners to have a safe play area for their two year old child, it is well established that personal considerations are not sufficient grounds for granting a variance.

In *Kline Zoning Case,* 395 Pa. 122, 148 A.2d 915 (1959), the court denied a hardship variance to a property owner whose wife suffered from asthma and hay fever and whose son suffered from a severe respiratory ailment and reversed the trial court's grant of a variance to permit the enclosure of a front porch encroaching upon the required minimum front yard line by three and one-half feet.

In *Borough of Latrobe v. Sweeney,* 17 Pa.Commonwealth Ct. 356, 331 A.2d 925 (1975), we denied a hardship variance requested by a dentist, who was unable to obtain financing to complete the entire building or to persuade his family to move into the completed portion of the building. We concluded that the hardship was personal to the applicant.

In *Szmigiel v. Zoning Board of Adjustment,* 6 Pa.Commonwealth Ct. 632, 298 A.2d 629 (1972), we considered the hardship of a long-time diabetic man with leg circulation problems who could not work for more than two hours at a time and required frequent rest periods in bed. We affirmed the trial court's denial of either a variance permit or a certificate for a home occupation to conduct a printing business in the basement of his home in a residential district.

In addition, under the City's Zoning Ordinance and also under the decided cases, it is well established that, in order to qualify for a variance there must be special circumstances peculiar to the applicant's land which "do not apply generally to land or structures in the neighborhood." Section 909.05(a)(1) of the Ordinance. *See, e.g., Tirotta v. Zoning Hearing Board of Yeadon,* 110 Pa.Commonwealth Ct. 501, 532 A.2d 937 (1987) (lack of adequate rear yard held not to be peculiar to applicant's property); *and English v. Zoning Board of Adjustment of Norristown,* 395 Pa. 118, 148 A.2d 912 (1959) (before a variance may be granted, an applicant must show that the circumstances affecting his land are unique and applicable to his land alone and not the neighborhood in general). *Accord Michener Appeal,* 382 Pa. 401, 115 A.2d 367 (1955). As noted above by the trial court, the Nuzzos' back yard ends "in a precipitous slope [l]ike most properties on this side of Grandview Avenue." Thus, their hardship is not unique.

We do not rule here that provision of a play area for children can never constitute substantial, serious and compelling grounds for granting a variance. We must conclude, however, that the evidence of record simply

---

we wanted to do that and have it enclosed so that he could go out there and we could go out there with him. I mean, he's not going to run like a crazy person on that, but it would give

him somewhere to ride his bike and sandbox, that type of thing.
(R.R. 12.)

does not establish that the Nuzzos proved the existence of such grounds in this case.

 Variances are generally granted only under exceptional circumstances and an applicant must satisfy all criteria necessary for the grant of a variance. *Gateside–Queensgate Co. v. Delaware Petroleum Co.,* 134 Pa.Commonwealth Ct. 603, 580 A.2d 443 (1990). The reasons for granting a variance must be substantial, serious and compelling. *Valley View.* The burden upon a landowner who seeks a variance is a heavy one. *Polonsky v. Zoning Hearing Board of Mount Leb-*

*anon,* 139 Pa.Commonwealth Ct. 579, 590 A.2d 1388 (1991).

Here, we must conclude that the Board erred in granting the Nuzzos' application for a dimensional variance for the addition of a twenty by twenty foot deck. Accordingly, we reverse the trial court's April 4, 1994 order.

### ORDER

AND NOW, this 31st day of January, 1995, the order of the Court of Common Pleas of Allegheny County dated April 4, 1994, is hereby reversed.

## APPENDIX A